U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

APR 26 2016

TONY R. MOORE  CLERK
BY _____
             DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| RICKY L. BROWN, Plaintiff | CIVIL ACTION NO. 3:12-CV-00289 |
| VERSUS | CHIEF JUDGE JAMES |
| FIFTH LOUISIANA LEVEE DISTRICT, TENSAS PARISH, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Doc. 62) filed by Defendant, the United States Army Corps of Engineers (the "Corps"). The Corps argues that: (1) because Plaintiff, Ricky L. Brown ("Brown"), seeks damages in excess of $10,000.00, Brown's claims fall within the exclusive jurisdiction of the Court of Federal Claims; (2) sovereign immunity bars Brown's claims for injunctive relief; (3) Brown lacks standing; and (4) Brown's claims are not ripe for judicial review.

Brown proposes stipulations and amendments to cure the first two deficiencies alleged by the Corps. Brown opposes the Motion, however, as it pertains to the issues of standing and ripeness.

The Motion has been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and the standing orders of this Court. For the foregoing reasons, the undersigned recommends that the Motion be granted, and that Brown's claims against the Corps be dismissed without prejudice.

I.  **Background**

   A.  **General background.**

In 2007, Brown purchased a 32.173-acre tract of land in Tensas Parish, Louisiana. Brown intends to construct a residential neighborhood on the land. Brown intends to name the neighborhood the "Wild Plum Recreation Park Subdivision" (the "Subdivision").

Brown's land "is located . . . between La Hwy 604 (which runs parallel the Mississippi River Mainline Levee) and Lake Bruin," which includes the Bondurant Levee and Hydraulic Fill. (Doc. 79-1, p. 8). The Hydraulic Fill was constructed to support the Bondurant Levee. Brown's land is a riparian area burdened by a legal public servitude in favor of the State of Louisiana, managed by the Fifth Louisiana Levee District (the "Levee District"). As a result, Brown was required to secure permits from the Fifth Louisiana Levee District (the "Levee District") before developing the Subdivision.

Brown claims that, since 2007, his efforts to obtain permits from the Levee District have been "stymied." This lawsuit resulted. Brown initially sued the Levee District and two of its employees. (Doc. 1-1, pp. 2-3). However, on April 1, 2015 – more than three years after filing the lawsuit – Brown amended his complaint to assert claims against the Louisiana Department of Transportation and Development ("DOTD") and the Corps. (Doc. 50, p. 4).

By separate order of this Court, DOTD has been dismissed from this lawsuit. The Corps seeks dismissal as well.

B. <u>Brown's claims against the Corps.</u>

The Subdivision was potentially subject to two federal statutes administered, in part, by the Corps. First, the Subdivision may have required a permit under the Rivers and Harbors Act, 33 U.S.C. § 408. Under that Act, a person may not damage or impair a "sea wall . . . levee . . . or other work built by the United States . . . for the preservation and improvement of any of its navigable waters or to prevent floods." <u>Id.</u> However, the Corps may "grant permission for the alteration or permanent occupation or use of any of the aforementioned public works when . . . such occupation or use will not be injurious to the public interest and will not impair the usefulness of such work." <u>Id.</u>

Second, under the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (the "CWA"), an individual may not discharge "dredged or fill material" into navigable waters without first obtaining a permit issued by the Corps. <u>Id.</u> § 1344(a). The Corps may issue either "individual" or "general" permits. To issue an individual permit, the Corps must conduct an intensive review, including an application, public notice, detailed analysis, and a formal agency determination. <u>See</u> <u>generally</u> 33 C.F.R. §§ 325.1-325.10. The Corps may issue a general permit "after notice and opportunity for public hearing . . . for any category of activities involving discharges of dredged or fill material if the Secretary determines that the activities in such category are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the

environment." 33 U.S.C. § 1344(e)(1). In either event, it is clear that the Corps must conduct a relatively lengthy and extensive review.

On February 10, 2015, the Levee District informed the Corps, by email, that Brown intended to develop the Subdivision. (Doc. 62-3, p. 1). The Levee District also forwarded Brown's plans for roads, ditches, power poles, and guy wires. (See id.). The Corp's Flood Control and Hydropower Section approved Brown's plans under the Rivers and Harbors Act. (Id., p. 2). On March 6, 2015, the Corps notified the Levee District that it had no objections to the Subdivision under 33 U.S.C. § 408. (Id.).

The Flood Control and Hydropower Section then forwarded Brown's plans to the Regulatory Branch of the Operations Division to determine whether Brown needed a CWA permit. (Id., p. 3). The Regulatory Branch decided that more information was needed to complete its evaluation. (Id.). After failing to contact Brown by phone – Brown's listed number was apparently disconnected – the Regulatory Branch sent Brown a letter dated February 27, 2015 (the "PCN Letter"). (Id.). Brown was asked to provide a Pre-Construction Notification, or "PCN," under General Condition 31 of the Corps' Section 404 Nationwide Permits. PCNs provide the Regulatory Branch with enough information to determine whether a CWA permit is required. (Id.).

On March 11, 2015, the Regulatory Branch received an email from Brown's attorney, dated March 8, 2015, acknowledging receipt of the PCN Letter and informing the Corps that Brown had sued the Levee District. (Id.). The Regulatory Branch responded by email on March 11, 2015 – in error – that its policies prohibited

review of a project in litigation. However, Brown was encouraged to continue gathering information for the PCN (the "PCN Email").[1] (Doc. 62-2, p. 17).

On April 1, 2015 – less than a month later – Brown filed the First Amended Complaint (Doc. 50) adding the Corps to this lawsuit. Meanwhile, preparation of Brown's PCN and review of his application apparently continued. In August 2015, Brown submitted a "Wetlands Delineation" to the Corps. (Doc. 79-1). On September 16, 2015 – less than a month after receiving the Wetlands Delineation – the Corps sent Brown a letter advising him that a CWA permit was not required. (Id., pp. 2-3). Brown's proposed construction of the Subdivision is not subject to further evaluation by the Corps. Brown's allegations therefore pertain to the Corps' actions prior to September 16, 2015.

In the First Amended Complaint, Brown asserts two factual allegations against the Corps. First, Brown references the February 27, 2015 PCN Letter. Brown claims the PCN Letter was "the first mention of General Condition 31" in the eight years Brown sought approval for the Subdivision. (Doc. 50, p. 10). Brown further claims the PCN Letter was "not an act of transparency," because it was not possible for Brown to comply with General Condition 31 within 30 days. (Id.).

Second, Brown references the March 11, 2015 PCN Email. Brown notes the PCN Email purported to end review of Brown's application because this litigation was ongoing. However, aside from finding the PCN Email "even more disturbing" than the PCN Letter, Brown asserts no other factual allegation about the PCN Email.

---

[1] The Corps has since acknowledged that ongoing litigation is not, in fact, an impediment to its review of a request for a CWA permit. (Id., p. 4).

~ 5 ~

Although not entirely clear, the First Amended Complaint seems to assert specific claims against the Corps for "regulatory taking" under state law and punitive damages. (Doc. 50, p. 11). In his prayer, Brown seeks injunctive relief, monetary and non-monetary benefits, compensatory and punitive damages "in sums no less than $1,000,000.00," costs, expenses, and attorney's fees, and pre-judgment interest. (Id., pp. 12-13).

The Corps moved to dismiss Brown's claims. On March 17, 2016, the Court conducted a hearing on the Corps' motion, as well as a motion to dismiss filed by DOTD. (Doc. 82). During the hearing, counsel for Brown acknowledged that the Corps was not involved in Brown's application process until 2015. Brown stipulated that Plaintiff seeks damages against the Corps in an amount less than $10,000.00.[2] Brown also stipulated that his claim for injunctive relief is moot.[3] Therefore, the Court's analysis is limited to Brown's claim against the Corps for damages of less than $10,000.00.

II. **Law and Analysis**

    A. **Standards governing the Motion to Dismiss.**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court may dismiss a claim over which it lacks subject-matter jurisdiction. "A motion to dismiss

---

[2] This stipulation would be necessary to save Brown's claim against the Corps from dismissal. Brown's claims exceeding $10,000.00 would be subject to the exclusive jurisdiction of the Court of Federal Claims. See 28 U.S.C. § 1346(a)(2).

[3] The Court agrees, as Brown obtained the approval he originally sought from the Corps in all respects. Even so, Brown's claim for injunctive relief would be dismissed, because "[s]overeign immunity bars not only suits against the Federal Government seeking monetary relief, but also actions seeking injunctive relief." City of Alexandria v. Fed. Emergency Mgmt. Agency, 781 F.Supp.2d 340, 346 (W.D. La .2011).

for lack of subject-matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief." In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs), 668 F.3d 281, 287 (5th Cir. 2012). "Plaintiffs bear the burden of establishing subject-matter jurisdiction." Id.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), a court must accept a plaintiff's factual allegations in the complaint as true. Machete Prods., L.L.C. v. Page, 809 F.3d 281, 287 (5th Cir. 2015). However, a court may "find facts as necessary to determine whether it has jurisdiction." Id. Further, a court need not accept as true legal conclusions masked as factual allegations. Id. "A court can find that subject matter jurisdiction is lacking based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" Ballew v. Cont'l Airlines, Inc., 668 F.3d 777, 781 (5th Cir. 2012) (quoting Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).

    B.    **Brown lacks – and always lacked – standing to assert any claim for damages against the Corps.**

"Article III of the United States Constitution limits the jurisdiction of federal courts to actual 'Cases' and 'Controversies.'" Crane v. Johnson, 783 F.3d 244, 251 (5th Cir. 2015). The "case or controversy" requirement mandates that a plaintiff establish "standing" to sue. Clapper v. Amnesty Int'l USA, 133 S.Ct. 1138, 1146, 185 L.Ed.2d 264 (2013).

A defendant may assert either a "facial" or a "factual" attack upon a plaintiff's standing. Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc., 778 F.3d 502, 504 (5th Cir. 2015). An attack is factual if the defendant "'submits affidavits, testimony, or other evidentiary materials.'" Id. (quoting Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981)). "To defeat a factual attack, a plaintiff 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" Superior MRI Servs., Inc., 778 F.3d at 504 (quoting Irwin v. Veterans Admin., 874 F.2d 1092, 1096 (5th Cir. 1989) aff'd sub nom. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).[4]

Generally, "[t]o establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." Crane, 783 F.3d at 251 (internal citations and quotations omitted). "'An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Crane, 783 F.3d at 251 (quoting Susan B. Anthony List v. Driehaus, 134 S.Ct. 2334, 2342, 189 L.Ed.2d 246 (2014)).

Moreover, to challenge action by a federal agency, a plaintiff must prove "final agency action" occurred, because "the [Administrative Procedure Act, 5 U.S.C. §§ 706 et seq. ("APA")] authorizes judicial review only of 'final agency action for which there

---

[4] The Corps' position is best understood as two separate arguments. First, Brown has failed to alleged an injury caused by the Corps sufficient to establish standing. Second, the Corps' actions prior to September 16, 2015 were not "final agency actions" subject to judicial review.

is no other adequate remedy in a court.'" Belle Co., L.L.C. v. U.S. Army Corps of Engineers, 761 F.3d 383, 387-88 (5th Cir. 2014) cert. denied sub nom. Kent Recycling Servs., LLC v. U.S. Army Corps of Engineers, 135 S.Ct. 1548, 191 L.Ed.2d 636 (2015). Generally,

> two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

Id. (internal citations and quotations omitted).

In this case, the Corps was only involved with Brown's development plans between February 10, 2015 and September 16, 2015. That is a total period of seven months and six days. During that time, the Corps considered two possible permits. On March 6, 2015, the Corps informed Brown he did not need the first potential permit under 33 U.S.C. § 408. Brown has established no "concrete injury" suffered in the 24 days preceding that decision.

On September 16, 2015, the Corps informed Brown he did not need the second potential permit under the CWA. Brown has no claim against the Corps for anything occurring after that date.

The only remaining issue, then, is whether the Corps caused Brown a "concrete and particularized" injury, or took "final agency action" as to Brown, before September 16, 2015. Even construing Brown's pleadings broadly, the Court discerns only five overlapping arguments to that effect. None establish standing.

First – although again, it is somewhat unclear – Brown seems to take issue with the Corps' general role in the permitting process. Brown states that the Corps "actually conducts the substantive review of permit applications to deter mine what if any environmental, socioeconomic, cultural, etc. impact the permit applications may have upon the land over which [it] possesses agency jurisdiction." (Doc. 73, p. 9). It is well-settled, however, that such a "process" or "program" is not reviewable "final agency action" under the APA. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 890, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (holding that a "land withdrawal review program" was "not an 'agency action' within the meaning of [APA] § 702, much less a 'final agency action' within the meaning of [APA] § 704").

Second, Brown argues that under 5 U.S.C. § 551(13), "agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." Brown argues that the Corps' alleged "failure to act" under § 551(13) constituted reviewable "final agency action" under 5 U.S.C. § 702. That is incorrect as a matter of law.

The United States Supreme Court has clarified the scope of judicial review under § 702:

> This provision contains two separate requirements. First, the person claiming a right to sue must identify some "agency action" that affects him in the specified fashion; it is judicial review "thereof" to which he is entitled. The meaning of "agency action" for purposes of § 702 is set forth in 5 U.S.C. § 551(13) . . . which defines the term as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. § 551(13). *When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the "agency action" in question must be "final agency action."* See

> 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review" (emphasis added).
>
> Second, the party seeking review under § 702 must show that he has "suffer[ed] legal wrong" because of the challenged agency action, or is "adversely affected or aggrieved" by that action "within the meaning of a relevant statute . . . . " [W]e have said that to be "adversely affected or aggrieved ... within the meaning" of a statute, the plaintiff must establish that the injury he complains of (his aggrievement, or the adverse effect upon him) falls within the "zone of interests" sought to be protected by the statutory provision whose violation forms the legal basis for his complaint.

Lujan, 497 U.S. at 882-83, 110 S.Ct. at 3185-86, 111 L.Ed.2d 695 (emphasis added). Accordingly, to seek judicial review, Brown must establish that the Corps took not just "agency action" under § 551(13), but *final* agency action under § 704.

The Corps' alleged "failure to act" did not constitute "final agency action." The Corps never declined to consider or rejected Brown's application. Rather, the Corps made clear – at all times before September 16, 2015 – that it intended to consider Brown's application in the future. The Corps delayed Brown's application to obtain a completed PCN and, in error, because litigation was ongoing. The Corps' representations were "tentative" and "interlocutory," did not give rise to "legal consequences," and were therefore not "final." Belle Co., L.L.C., 761 F.3d at 388.

Third, Brown claims the Corps' "failure to act" – or to be involved in the permitting process – between 2008 and 2015 caused a concrete injury. Brown argues that wrongful taking claims are cognizable under 5 U.S.C. § 702, and states, in conclusory fashion, that his standing under "the facts of this matter" are "unassailable." (Doc. 73, p. 12).

~ 11 ~

Brown does not establish that the Corps was aware of his planned development between 2008 and 2015. Instead, the evidence indicates that the Corps was, in fact, *unaware* of Brown's plans before February 10, 2015. Brown's contrary allegation is conclusory, unsupported, and inadequate to establish standing.[5]

Fourth, Brown states the PCN Letter was "not an act of transparency" because Brown could not have assembled a PCN within 30 days as required by the PCN Letter. The import of this argument remains unclear. Brown fails to clarify why compliance was not possible, or why an extension of the deadline could not have been requested and granted. In any event, Brown successfully submitted the PCN well after any 30-day deadline had expired.

Finally, Brown attempts to construe the PCN Email as "final agency action" or action which caused him a concrete injury. Brown states – with no factual support – that the Corps' now-recanted policy against reviewing projects in litigation either: (1) prevented the Corps from reviewing Brown's permit applications between 2008 and 2015; and/or (2) "effectively suspended the permitting process" for some undetermined period of time. (Doc. 73, p. 11).

Again, the Corps was not aware that Brown's plans were the subject of litigation before March 11, 2015. The Corps' misstatement could not have injured Brown before then.

After March 11, 2015, there is no indication that the misstatement caused any meaningful delay. Thomas R. Shaw, Jr., Chief of the Corps' Flood Control and

---

[5] Brown has provided no indication of how or why the Corps may be sued for *not being involved* in the permitting process between 2008 and 2015, if that is, indeed, part of his claim against the Corps.

Hydropower Section, acknowledged the misstatement in his affidavit dated July 24, 2015. (Doc. 62-3, p. 4). Accordingly, the misstatement was corrected – and any possible delay ended – four months and 13 days later. There is no indication that Brown suffered a concrete injury during that time. Brown's development remained prohibited by his ongoing dispute with the Levee District.

More importantly, Brown's PCN was incomplete on March 11, 2015. The Corps delayed because Brown had not yet completed the Wetlands Delineation. The Corps approved Brown's application less than 30 days after receiving Brown's Wetlands Delineation. The main impetus for any delay was Brown's failure to satisfy the PCN requirements, not the misstatement of Corps policy. In any event, Brown has established no concrete injury suffered as a result of any insubstantial delay caused by the misstatement.

Moreover, the PCN Email was, by its own terms, not "final agency action." In fact, the PCN Email stated that Brown should continue to fulfill the PCN requirements and, if necessary, submit a completed PCN once litigation ended. (Doc. 62-2, p. 17). Again, these statements were "tentative" and "interlocutory," and did not generate "legal consequences." Belle Co., L.L.C., 761 F.3d at 388.

C. **Brown's remaining claims must also be dismissed.**

As noted above, Brown concedes his claims for damages in excess of $10,000.00, and for injunctive relief, should be dismissed. And as detailed above, the Court agrees, even without Brown's concessions.

III. <u>Conclusion</u>

Brown does not have standing to sue the Corps for damages in any amount. Brown's claim for injunctive relief – if it was ever viable – is now moot. Accordingly,

IT IS HEREBY RECOMMENDED that the Motion to Dismiss (Doc. 62) be GRANTED, and that all claims asserted by Plaintiff, Ricky L. Brown, against the United States Army Corps of Engineers, be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, this 25th day of April, 2016.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE